OPINION
WALLACE, Senior Circuit Judge:
Roderick Lim Go petitions us to review the Board of Immigration Appeals’ (Board) denial of his motion to reopen under the Convention Against Torture (CAT). Go contends that the Board erroneously applied 8 C.F.R. § 1003.2(c), the regulation governing motions to reopen, even though this regulation “makes no reference” to the CAT. Go also contends that the Board abused its discretion in concluding that certain “new evidence” presented in his motion to reopen was not material.
*606 We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition. In a separately filed unpublished disposition, we address the petition of Grace Tan Go, which presents the same arguments as are presented here.
I.
In a previous proceeding, Go applied for asylum, withholding of removal, and protection under the CAT. After the Board denied those claims, we denied Go’s petition for review in a published opinion. See Go v. Holder, 640 F.3d 1047 (9th Cir.2011). Here, we briefly recapitulate the background of this case, insofar as it is pertinent to the present appeal.
As we explained in our prior opinion, Go’s application for asylum and other forms of relief was predicated on his allegation that he would be “subject to a sham criminal prosecution in the Philippines if removed to that country.” Id. at 1050. He alleged that he and his wife had been “falsely charged with kidnapping” a prominent individual in the Philippines, and that they had fled to the United States to escape prosecution and avoid being retaliated against by members of that individual’s family. Id. With respect to the CAT, Go alleged that he “would be subject to torture if he were held in a Philippine detention facility pending his trial for kidnapping.” Id.
An immigration judge (IJ) found that Go was ineligible for asylum and withholding of removal because of his admission that he was “involved in an illegal drug-trafficking scheme.” Id. As to the CAT claim, the IJ concluded that Go had “failed to carry his burden of demonstrating eligibility for relief.” Id. This conclusion was predicated on testimony from a “government witness” who had “testified that Go would not be tortured in a Philippine detention facility while awaiting trial.” Id. In two separate orders, the Board denied Go’s appeal. Id. The first of these orders affirmed the IJ’s conclusion that Go was statutorily ineligible for asylum and withholding of removal. Id. However, the CAT claim was remanded for further proceedings. Id. After the IJ held proceedings to address that claim more fully, the Board issued its second order, which rejected Go’s claim for relief under the CAT. Id. at 1051. In this order, the Board considered several items of evidence that had been presented before the IJ, including: (1) the fact that “one of Go’s co-defendants in the kidnapping ... had not been tortured or otherwise mistreated”; (2) the testimony of Cezar Tajanlan-git, a former prosecutor in the Philippines, “who testified that torture was uncommon in the facility where Go would be detained”; (3) the “notoriety” of the case, which made it “unlikely that an ill-intentioned officer would believe that he could abuse [Go] without being reported in the press”; and (4) a resolution issued by the Philippine Justice Department that called for dismissal of the kidnapping charges against Go. Id.
We denied Go’s petition to review the Board’s orders. As to the CAT claim, we held that “substantial evidence supported] the Board’s conclusion that Go is not likely to be tortured upon return to the Philippines.” Id. at 1054. We emphasized several aspects of the evidence that led to this conclusion. First, we observed that one of Go’s “alleged accomplices has been detained for some time without harm or incident,” and that although several of his family members had also been charged with participating in his alleged crimes, none of them had been taken into government custody, much less tortured. Id. at 1053. Second, we pointed out that the Philippine government had ordered that the kidnapping charges against Go be dismissed, and said that if he is “no longer *607 subject to a criminal prosecution in the Philippines, it follows that he is unlikely to be detained, let alone tortured.” Id. Finally, we stated that “even if the kidnapping charges [were to] go forward,” there was still additional evidence that Go was unlikely to be tortured. Id. at 1054. We first highlighted that Tajanlangit, the former prosecutor, had testified that torture was “not common” in the facility where Go would be detained and that the controversial nature of Go’s case would “increase public scrutiny over the government’s conduct.” Id. We also considered country reports stating that Philippine officials are more likely to follow correct procedures where a criminal suspect is from “an influential position or is of a higher social status.” Id. “Viewing the record as a whole,” we upheld the Board’s determination that Go was not likely to be tortured upon return to the Philippines. Id.
Following our decision, Go filed a motion before the Board to reopen for protection under the CAT. Go’s motion to reopen was predicated upon “new and previously unavailable evidence,” which Go alleged “call[ed] into question” the testimony offered by Tajanlangit before the IJ. The Board denied Go’s motion to reopen as untimely, citing 8 C.F.R. § 1003.2(c) in support of this conclusion. It also held that the “additional evidence regarding [Tajanlangit] does not affect the reliability or veracity of his testimony in this proceeding,” while the other “additional background evidence” submitted in connection with the motion to reopen did not “indicate that conditions are worsening or deteriorating in the Philippines in a manner material” to Go’s claim.
II.
The regulations governing motions to reopen before the Board appear at 8 C.F.R. § 1003.2. These regulations provide that a party may file only one motion to reopen, and that such a motion “must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.” 8 C.F.R. § 1003.2(c)(2). There are several exceptions to these limitations on a party’s eligibility to file a motion to reopen, including an exception for motions to reopen “based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.” Id. § 1003.2(c)(3)(h).
Go’s principal argument is that the regulations governing motions to reopen at 8 C.F.R. § 1003.2(c) do not apply to motions that arise under the CAT, insofar as the language of these regulations “makes no reference to either the [CAT] or to deferral of removal.” This is an argument that we have repeatedly rejected in a series of unpublished decisions. See, e.g., Singh v. Holder, 444 Fed.Appx. 167, 167 (9th Cir.2011) (rejecting the petitioner’s “contention that there are no time limits for filing a motion to reopen to apply for CAT relief,” and citing 8 C.F.R. § 1003.2(c)(2) in support of that conclusion); Chen Chen v. Holder, 388 Fed.Appx. 608, 609 (9th Cir.2010) (same); Flores v. Holder, 362 Fed.Appx. 773, 774 (9th Cir.2010) (same); Lopez Hernandez v. Holder, 339 Fed.Appx. 781, 782 (9th Cir.2009) (same).
That conclusion is also supported by the logic of our precedents and by holdings from our sister circuits.[1] Our decision in *608 Chen v. Mukasey, 524 F.3d 1028 (9th Cir.2008), is instructive. In Chen, we upheld a decision of the Board holding that a petitioner’s motion to reopen was “time- and number-barred ... under 8 C.F.R. § 1003.2(c)(2).” Id. at 1030-31. The petitioner in that case argued that her removal would violate the CAT. Id. at 1033. We rejected that contention, stating that the petitioner had “failed to show how [the CAT] is violated by the application of reasonable procedural requirements for the adjudication of [a petitioner’s] claims.” Id.
In support of that conclusion, we cited with approval the First Circuit’s decision in Foroglou v. Reno, 241 F.3d 111 (1st Cir.2001). As the First Circuit explained in Foroglou:
[The petitioner’s] main argument is that the Board’s time limit on petitions to reopen is itself invalid because it would result in denying relief to deportees who might then suffer torture, contrary to the [CAT] and to the policies embodied in federal legislation and regulations that implement the [CAT] or otherwise protect the rights of aliens. The short answer to this argument is that [the petitioner] points to nothing in [the CAT] or legislation that precludes the United States from setting reasonable time limits on the assertion of claims under [the CAT] in connection with an ongoing proceeding or an already effective order of deportation. Even in criminal cases, constitutional and other rights must be asserted in a timely fashion.
Id. at 113.
Go’s argument, in a nutshell, is that there cannot be any “regulatory limitation” on motions to reopen under the CAT. But as we concluded in Chen, and as the First Circuit explained in Foroglou, this is not the case. Rather, as we held in Chen, the CAT is not violated by the imposition of “reasonable procedural requirements” on the adjudication of a petitioner’s claims. Chen, 524 F.3d at 1033. Indeed, in Chen we implicitly held that the specific time and number limitations on motions to reopen set forth in 8 C.F.R. § 1003.2(c)(2) could be applied to CAT claims, a holding we make explicit in this opinion. Id. Go points to nothing in the CAT itself, or in legislation implementing the CAT, that would preclude the Board from setting reasonable procedural requirements on motions to reopen under the CAT. See Foroglou, 241 F.3d at 113. Moreover, Go points to no other statute or regulation governing motions to reopen for CAT claims. Thus, if 8 C.F.R. § 1003.2(c) did not apply to CAT claims, there would be no mechanism for applicants under the CAT to file a motion to reopen.
Finally, although we are aware of no published opinion from another circuit that expressly holds that 8 C.F.R. § 1003.2(c) applies to CAT claims, it appears that every circuit to have considered the question has concluded that it does. See, e.g., Zheng v. Bureau of Citizenship & Immigration Servs., 472 Fed.Appx. 91, 92 (2d Cir.2012) (holding that “there is no merit to the petitioner’s argument that motions to reopen seeking relief under the [CAT] are excused from the applicable time and numerical limitations”); Thomas v. Att’y Gen. of the U.S., 308 Fed.Appx. 587, 591— 92 (3d Cir.2009) (concluding that a motion to reopen brought under the CAT is governed by the time and number limitations of 8 C.F.R. § 1003.2(c)); Sunarto v. Mukasey, 306 Fed.Appx. 957, 961-62 (6th Cir. *609 2009) (concluding that a motion to reopen that included a CAT claim was required to meet the requirements of 8 C.F.R. § 1003.2(c)); Ding v. U.S. Att’y Gen., 507 Fed.Appx. 845, 847-48 (11th Cir.2013) (applying the timeliness limitation of 8 C.F.R. § 1003.2(c) to a motion to reopen that included a CAT claim). As we have repeatedly explained, in the immigration context the “need for national uniformity is paramount,” because the power to regulate immigration is “unquestionably exclusively a federal power.” Ferreira v. Ashcroft, 382 F.3d 1045, 1050 (9th Cir.2004) (internal quotation marks omitted); see also Kaganovich v. Gonzales, 470 F.3d 894, 897-98 (9th Cir.2006) (same). Thus, the uniformity among the circuits as to the applicability of 8 C.F.R. § 1003.2(c) to CAT claims also militates in favor of our holding.
Accordingly, we hold that the procedural requirements specified in 8 C.F.R. § 1003.2(c) apply to CAT claims.
III.
Given that Go’s motion to reopen was governed by 8 C.F.R. § 1003.2(c), and therefore untimely, the Board concluded that the motion could be granted only if it was “based on changed circumstances arising in the country of nationality” and predicated on “material” evidence of such “changed circumstances” that was “not available and could not have been discovered or presented at the previous hearing.” The Board held that neither of the two types of additional evidence presented in the motion to reopen met this description. First, the Board considered additional evidence regarding Tajanlangit, the former prosecutor from the Philippines, and concluded that this evidence did not “challenge or affect the credibility, reliability or veracity” of his testimony. Second, the Board considered “additional background evidence” about the Philippines. However, the Board concluded that this evidence did not demonstrate “worsening country conditions,” insofar as the record “already contained generalized evidence suggesting a relatively high level of mistreatment and abuse” in the Philippines.
We review the Board’s denial of a motion to reopen for abuse of discretion. Bhasin v. Gonzales, 423 F.3d 977, 983 (9th Cir.2005). Under this standard, the Board’s decision may only be reversed if it is “arbitrary, irrational, or contrary to law.” Perez v. Mukasey, 516 F.3d 770, 773 (9th Cir.2008) (internal quotation marks omitted). We hold that the Board did not abuse its discretion in concluding that Go’s additional evidence was immaterial. First, as to Tajanlangit, Go offered evidence that he was “admonished” by a court in a case involving a disgruntled former client, as well as evidence regarding a bounced check allegedly issued by the prosecutor’s office. The Board did not abuse its discretion in concluding that this evidence did not undermine the “credibility, reliability or veracity” of Tajanlangit’s statements in this proceeding. Second, Go offered evidence showing that there is corruption and killing in the relevant area of the Philippines. The Board did not abuse its discretion in concluding that the evidence of “mistreatment and abuse” presented by Go did not constitute evidence of “worsening” country conditions, which means that this evidence was insufficient to show that the “changed circumstances” exception to the bar on untimely motions to reopen applies to this case.
IV.
Finally, Go argues that the Board should have granted his motion to reopen sua sponte pursuant to 8 C.F.R. § 1003.2(a). However, we lack jurisdiction to review the Board’s decision not to invoke its sua sponte authority to reopen *610 proceedings. See, e.g., Sharma v. Holder, 633 F.3d 865, 874 (9th Cir.2011).
PETITION FOR REVIEW DENIED in part; DISMISSED in part.

. Although the Board in this case held that § 1003.2 applies, we do not defer to that decision, because it is a “one-member, non-precedential, [Board] order” and, therefore, *608 "does not reflect the agency’s fair and considered judgment on the matter in question.” Lezama-Garcia v. Holder, 666 F.3d 518, 532 (9th Cir.2011) (internal quotation marks and citation omitted).